# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIA DEL SOCORRO QUINTERO PEREZ; BRIANDA ARACELY YANEZ QUINTERO; C.Y., a minor; and J.Y., a minor, <br> 406 5th St. NW, Suite 100 <br> Washington, DC 20001, <br><br>      Petitioners, <br><br>      vs. <br><br> U.S. CUSTOMS AND BORDER PROTECTION, <br> 1300 Pennsylvania Ave. NW <br> Washington, DC 20229, <br><br>      Respondent. | Case No. _____ |

## PETITIONERS' MOTION TO COMPEL RULE 30(b)(6) DEPOSITION OF RESPONDENT U.S. CUSTOMS AND BORDER PROTECTION

Petitioners Maria Del Socorro Quintero; Brianda Aracely Yañez Quintero; C.Y., a minor; and J.Y., a minor ("Petitioners") hereby move, pursuant to Federal Rule of Civil Procedure 45, for an order compelling U.S. Customs and Border Protection ("CBP") to comply with the notice of deposition served on December 15, 2015 ("Subpoena") in connection with Perez et al. v. United States et al., No. 3:13-cv-1417-WQH-BGS (S.D. Cal.) ("Border Shooting Action").

## I.     INTRODUCTION

This discovery dispute arises from CBP's unfounded refusal to comply with a notice of Rule 30(b)(6) deposition concerning matters that are indisputably relevant to the Border Shooting Action, a civil rights case addressing the ever-increasing and unjustified use of deadly force by CBP agents at the U.S.-Mexico border.  Despite meet-and-confer efforts resulting in Petitioners foregoing a majority of the matters noticed for deposition, CBP continues to refuse to comply with the subpoena and produce a 30(b)(6) deponent.  CBP's objections to the Subpoena are twofold.  CBP first contends CBP is not required to comply with the Subpoena because Petitioners have not, to the satisfaction of CBP's counsel, complied with CBP's Touhy regulations.  Secondly, CBP contends none of the matters noticed for deposition are relevant to the Border Shooting Action.  CBP's arguments fail, and the Court should order CBP to produce a 30(b)(6) deponent without further delay.

//

## II.    BACKGROUND

Petitioners allege, in the Border Shooting Action, that CBP agents shot and killed Jesus Alfredo Yañez Reyes ("Yañez") in violation of the Fourth and Fifth Amendments.[1]  (See Ex. 1 to McBride Decl., 3d Amended Compl.)  Petitioners allege CBP enacted and implemented a policy decreeing that rock throwing by persons of Hispanic descent (and presumed Mexican nationality) at the border is considered per se deadly force, warranting a lethal response by CBP agents ("Rocking Policy").

Petitioners allege that, as a result of, and in compliance with, the Rocking Policy, CBP Agents Chad Michael Nelson ("Nelson") and Dorian Diaz ("Diaz") (together, "Agents") shot Yañez.  Just before the Agents shot Yañez, Yañez had been trying to distract the Agents from beating Yañez's friend, Jose Ibarra-Murrieta ("Murrieta"), who the Agents had captured on the U.S. side of the border fence. According to the agents, Yañez climbed the primary fence at the border from the Mexican side and threw two rocks towards one of the agents. Yanez then climbed the fence again and threw a board towards one of the agents.  Neither of the Agents

---

[1] While the court in the Border Shooting Action has dismissed (without prejudice) Petitioner's Fifth Amendment Due Process Claims, (see Ex. __ to McBride Decl., 3d Amended Compl. ¶¶ 187-198; Ex. __ to McBride Decl., Ord. on Mot. Dism. 1st Amended Compl. at 23-24), Petitioners are confident the reasoning supporting dismissal of these claims will not withstand appellate review and that these claims will be revived on appeal given more recent case law addressing the application of Fifth Amendment rights of individuals shot at the border by CBP agents.  See, e.g., Hernandez v. United States, 757 F.3d 249 (5th Cir. 2014).

were seriously injured as a result of the rocks or board.  When Yañez climbed the fence a third time–this time holding nothing–Diaz shot Yañez in the head, killing him.

Petitioners have, throughout the pleading stage, alleged many other facts in support of a total of seven causes of action against individuals and governmental entities.  Following several rounds of 12(b)(6) motions and amended complaints, only the following claims, against the following parties, remain to be litigated:

- Petitioners' claim that Diaz violated Yañez's Fourth Amendment rights when Diaz provoked a confrontation (by, e.g., beating Murrieta) that proximately resulted in Yañez being shot, and when Diaz shot Yañez even though, at the time, Yañez presented no danger to the Agents.  (See Ex. 1 to McBride Decl., 3d Amended Compl. ¶¶ 177-186.)  (As stated in note 1, above, Petitioners maintain Diaz's conduct also violated Yañez's Fifth Amendment rights.)

- Petitioners' claim that Nelson violated Yañez's Fourth Amendment rights when he conspired with Diaz to violate Murrieta's Fourth Amendment rights, which conspiracy proximately resulted in Yañez being shot.  (See Ex. 1 to McBride Decl., 3d Amended Compl. ¶¶ 177-186; Ex. 2 to McBride Decl., Ord. on Mot. Dism. 2d Amended Compl. at 40-43, 45-46.)  (As stated in note 1, above, Petitioners maintain Nelson's conduct also violated Yañez's Fifth Amendment rights.)

- Petitioners' claim that CBP Chief Michael J. Fisher ("Fisher") violated Yañez's Fourth Amendment rights when he permitted and/or encouraged the enactment and implementation of the Rocking Policy, which policy proximately caused Yañez's death. (See Ex. 1 to McBride Decl., 3d Amended Compl. ¶¶ 171-176; Ex. 3 to McBride Decl., Ord on Mot. Dism. 1st Amended Compl. at 18-19; Ex. 2 to McBride Decl., Ord on Mot. Dism. 2d Amended Compl. at 30, 38.)

On December 15, 2015, Petitioners served CBP with a subpoena and notice of Rule 30(b)(6) deposition that included twenty matters on which Petitioners intended to examine CBP.   (See Ex. 4 to McBride Decl., Not. of Dep. & Sub.) Generally, these matters pertain to:

- certain types of complaints made against Diaz and Nelson (numbers 1-3);

- any discipline imposed on Diaz and Nelson (numbers 4-5);

- information derived from any background investigation into Diaz and Nelson (numbers 6-7);

- any review conducted into the events giving rise to the Border Shooting Action (numbers 8-11);

- any training Diaz and Nelson received regarding the use of force (number 12);

- Yañez's geographic location when Diaz shot him, when he fell, and when he died (numbers 13-15);

- any interviews, reports, tangible evidence, photographs, or video surveillance conducted, written, or taken by CBP in connection with the events giving rise to the Border Shooting Action (numbers 16-20).

By letter dated January 12, 2016, CBP "decline[d] to comply with [the] subpoena." (Ex. 5 to McBride Decl., 01-12-2016 Ltr. from CBP.) CBP asserted Petitioner's had not complied with CBP's <u>Touhy</u> regulations, specifically the requirements set forth in 6 C.F.R. § 5.45(a) and 19 C.F.R. § 103.22(c).[2]

Petitioner's thereafter engaged in thorough meet-and-confer efforts. Counsel for Petitioners and CBP exchanged emails and phone calls, met in person, and exchanged letters. (McBride Decl. ¶ 4.) Through this process, Petitioners explained, in writing, the relevance of the matters noticed for deposition, (Ex. 6 to McBride Decl., 02-08-2016 Ltr. to CBP), thus satisfying 6 C.F.R. § 5.45(a) and 19 C.F.R. § 103.22(c).

---

[2] 6 C.F.R. § 5.45(a) provides in relevant part:

> If official information is sought, through testimony or otherwise, by a request or demand, the party seeking such release or testimony must (<u>except as otherwise required by federal law</u> or authorized by the Office of the General Counsel) set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought.

(Emphasis added.)

19 C.F.R. § 103.22(c) provides in relevant part: "A party seeking CBP information shall serve . . . a statement that sets forth a summary of the documents or testimony sought and its relevance to the proceeding."

During the meet-and-confer process, Petitioners offered to forgo examination on <u>all</u> matters except matter numbers 6, 8, 10, 12 (as to Diaz only), 16, 17, 18, and 19.  (Ex. 7 to McBride Decl., 01-26-2016 Email to CBP.)   CBP rejected this compromise, asserting it would not produce any witness for a Rule 30(b)(6) deposition because, even after eliminating a majority of the noticed matters, the remaining matters "are duplicate and unnecessary in that most of the requested testimony has been obtained by the depositions already taken of the defendants, or submitted in written discovery."  (Ex. 8 to McBride Decl., 02-02-2016 Email from CBP.)  CBP went on, stating: "It is the agency's position that the lack of relevance of your requests creates a great burden to the agency under the <u>Touhy</u> regulations to produce numerous witnesses to address issues that already have been responded to by the named defendants."  (<u>Id.</u>)

Petitioners responded by letter dated February 8, 2016, asserting CBP's <u>Touhy</u> regulations do not govern the discoverability of information under the Federal Rules of Civil Procedure and outlining the relevance and necessity of the remaining matters noticed for deposition.  (Ex. 6 to McBride Decl., 02-08-2016 Ltr. to CBP.) This effort was, on February 10, 2016, met by CBP's continued refusal to produce any Rule 30(b)(6) deponent.  (Ex. 9 to McBride Decl., 02-10-2016 Email from CBP.) This Motion ensued.

//

## III.   ARGUMENT

### A.   Legal Standard

The Federal Rules of Civil Procedure authorize broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(l).  "[T]he general policy favoring broad discovery is particularly applicable where, as here, the court making the relevance determination has jurisdiction only over the discovery dispute, and hence has less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation."  Jewish War Veterans of the United States of Am., Inc. v. Gates, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) (citation omitted).

As a corollary, "[l]imiting discovery . . . pursuant to Rule 26 and/or Rule 45 'goes against courts' general preference for a broad scope of discovery.'" U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp., 301 F.R.D. 20, 25 (D.D.C. 2014); see also Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible.").  "The person objecting to production has a heavy burden to show that the subpoena should not be enforced."  Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC, 286 F.R.D. 8, 11 (D.D.C. 2012); see also In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 9 (D.D.C. 2010) ("The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or

privileged.").

Although an agency may, by regulation, prescribe a method for responding to a document request or demand, see Touhy v. Ragen, 340 U.S. 462 (1951), "the legal basis for any opposition to [a] subpoena must derive from an independent source of law such as governmental privilege or the rules of evidence or procedure." Watts v. SEC, 482 F.3d 501,509 (D.C. Cir. 2007); see also SEC v. Selden, 484 F. Supp. 2d 105, 109 (D.D.C. 2007) ("Touhy regulations apply solely to the agency's methods for handling discovery requests.  The means by which parties issue subpoenas on the government, and the applicable legal standards governing compliance, are governed by the Federal Rules of Civil Procedure.").

Federal agencies are routinely compelled to comply with requests for Rule 30(b)(6) depositions.  See, e.g., Thomas v. Johnson, 85 F. Supp. 3d 240, 243-44 (D.D.C. 2015) (compelling 30(b)(6) deposition of Department of Homeland Security); SEC v. Merkin, 283 F.R.D. 689, 690-91 (S.D. Fla. 2012) (compelling 30(b)(6) deposition of SEC); SEC v. Morelli, 143 F.R.D. 42, 46 (S.D.N.Y. 1992) (compelling 30(b)(6) deposition of SEC).

//

//

//

**B.     CBP Cannot Meet Its Heavy Burden of Showing the Subpoena Should Not be Enforced**

As a preliminary matter, any objection by CBP as to compliance with its Touhy regulations should be overruled because Petitioners have substantially complied with the regulations that CBP initially asserted Petitioners failed to comply with, namely, 6 C.F.R. § 5.45(a) and 19 C.F.R. § 103.22(c), and because CBP's Touhy regulations do not govern the ability to obtain discovery under the Federal Rules of Civil Procedure.  See Watts, 482 F.3d at 509; Selden, 484 F. Supp. 2d at 109.

The Court should, in applying the Federal Rules of Civil Procedure outlined above, compel CBP to comply with the Subpoena.  CBP does not contend the noticed matters are privileged.  And, as set forth below, the noticed matters are relevant and would not cause CBP any undue burden.

The parties have complied with the meet-and-confer requirements of Local Civil Rule 7(m) and Federal Rule of Civil Procedure 37(a)(1).

**1.     The Matters Noticed for Deposition Are Relevant to Petitioner's Claims in the Border Shooting Action**

CBP's argument, that the still-contested matters for examination [i.e., numbers 6, 8, 10, 12 (as to Diaz only), 16, 17, 18, 19, and 20] are irrelevant, is mistaken.

CBP argues matter numbers 6, 8, and 10 (relating to Diaz's background) are not relevant because:

> there are no negligent hiring claims and no defendant to which his background prior to CBP is relevant.  Further, all three witnesses have testified, under oath, that no discipline occurred in this case (or in any case against Agents Diaz and Nelson for that matter), and that Chief Fisher did not have any role in determining discipline while he was the Chief of Border Patrol.  All three defendants written responses to your discovery requests also verify this fact.

Diaz's background, however, is relevant to the extent it reveals Diaz's state of mind at the time of the incident.  Prior complaints (whether internal or external) against Diaz, any criminal record, and any professional associations, for example, may be highly relevant to Diaz's state of mind during the incident.  Note, if there is no such information in Diaz's background, CBP will bear little to no undue burden.

While subjective intent may have limited relevance to Fourth Amendment excessive-force claims, see, e.g., Wasserman v. Rodacker, 557 F.3d 635, 641 (D.C.Cir. 2009), subjective intent is surely relevant to Fifth Amendment due-process claims based on conduct that shocks the conscience, [3] see, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 846-854 (1998), in addition to Petitioners' claims for punitive damages based on a reckless or malicious intent, see, e.g., Carey v. Piphus, 435 U.S. 247, 257 n.11 (1978).

//

---

[3] See n.1, above.

Returning to CBP's objections, it is insufficient for its counsel to testify as to whether any discipline occurred. Even if no discipline occurred, which would not be surprising,[4] this does not negate the relevance of the identity of the person(s) who reviewed Diaz's conduct, nor the results and impressions of any such review—especially where such results and impressions were not included in documents that have already been produced. CBP's objections to matter numbers 6, 8, and 10 should be overruled, and CBP should be compelled to produce a 30(b)(6) witness prepared to testify as to these matters.

As to matter number 12, CBP asserts all documents regarding Diaz's training have been produced. Petitioners do not dispute this, yet Petitioners remain entitled to CBP's testimony as to Diaz's training to determine the type and quality of his training, especially with regard to the use of deadly force in response to rock throwing, and whether Diaz acted in accordance with CBP's expectations. How Diaz was trained, and whether he acted according to CBP standards, are two areas of inquiry within CBP's unique knowledge.[5] These facts are relevant, as discussed

---

[4] The importance of extrajudicial killings by border patrol agents at the border is a topic of increasing concern among lawyers and scholars. See, e.g., Guinevere E. Moore & Robert T. Moor, The Extraterritorial Application of the Fifth Amendment: A Need for Expanded Constitutional Protections, 46 St. Mary L.J. 1 (2014-15), http://www.stmaryslawjournal.org/pdfs/Moore_Step%2011_McKeown_FINALv3.pdf.

[5] Diaz himself can provide only an employee's perspective of whether he acted in accordance with CBP training and standards; naturally, this is an incomplete and potentially biased perspective.

above, to whether Diaz's conduct shocks the conscience, in addition to whether Diaz

acted with the necessary intent to be liable for punitive damages.  If Diaz was, for

example, properly trained and yet acted against his training, a jury would be more

likely to conclude Diaz's conduct was unreasonable, shocked the conscience, and/or

was reckless or malicious in motive.  CBP's objections to matter number 12 should

be overruled, and CBP should be compelled to produce a 30(b)(6) witness prepared

to testify as to his matter.

As to matter numbers 16, 17, and 18, CBP asserts:

The defendants [Diaz and Nelson] have already testified, under oath, that there were only two interviews:  OIG and SDPD.  And SDPD, as the lead investigative agency, has already testified through witnesses that it took possession of the evidence.  In addition, your office has the CIIT report prepared by CBP employees.

CBP's objections miss the mark.

To begin with, CBP's implication that the underlying defendants' testimony

was conclusive as to this matter, is incorrect.  Diaz could not remember any

information about the purportedly second interview, including who conducted it and

whether or not it was audio recorded, and Nelson was not even sure that he was

interviewed a second time.  (Ex. 10 to McBride Decl., Diaz Dep. at 16:9-18:8; Ex.

11 to McBride Decl., Nelson Dep. at 18:7-19:10.) Petitioners are entitled to official

testimony as to what interviews were conducted following the incident giving rise

to the Border Shooting Action, along with the circumstances, impressions, and

findings surrounding any interviews.

Petitioners further disagree that the SDPD (i.e., San Diego Police Department) witnesses testified that they collected all evidence. Actually, these witnesses specifically said there were several agencies other than SDPD (including CBP) that were conducting simultaneous investigations into the shooting and that these agencies may have collected their own evidence. (McBride Decl. ¶ 5.) Plaintiffs are entitled to official testimony as to what, if any, evidence CBP collected regarding the shooting. The Court should therefore overrule CBP's objections to matter numbers 16, 17, and 18, and compel CBP to produce a 30(b)(6) witness prepared to testify as to these matters.

As to matter number 19, CBP asserts all photos within the possession of CBP have been produced. Petitioners, however, dispute CBP has produced all photos in its possession that relate to the incident. CBP Agent Elisabeth Berry testified she and another CBP investigator took a number of photos of Diaz and Nelson at the scene, which were never produced to Petitioners. Petitioners are entitled to, not only copies of all photographs taken by CBP, but also to official testimony as to which photos were taken, along with the circumstances surrounding the taking of any photos. CBP's objections to matter number 19 should therefore be overruled, and the Court should compel CBP to produce a 30(b)(6) witness prepared to testify as to this matter.

## 2.     Compelling CBP to Produce a 30(b)(6) Witness Would Not Cause CBP Any Undue Burden

A "responding party cannot 'merely state, in conclusory fashion, that [discovery] requests are unduly burdensome." Fisher v. Network Software Assocs., 217 F.R.D. 240, 246 (D.D.C. 2003) (citation omitted); see, e.g., Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 354 (D.D.C. 2011) (denying motion to quash). Rather, a court should "entertain[] the burdensome objection only when the responding party demonstrates how" a request "is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.'" Id. (citation omitted); see also Sallah v. Worldwide Clearing LLC, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012) ("Objections that state that a discovery request is 'vague, overly broad, or unduly burdensome' are, standing alone, meaningless and do not comply with [the Federal Rules]."). In turn, "[t]o determine the level of burden . . . on the responding party, the court 'should balance the need for discovery against the burden imposed on the person ordered to produce the documents.'" Fisher, 217 F.R.D. at 246 (citation omitted). Here, the scale tips decidedly in Petitioners' favor, as CBP has offered no affidavit or other evidence demonstrating how the matters noticed for deposition are burdensome or, for that matter, overly broad.  Any objection by CBP that the Subpoena would result in undue burden should therefore be overruled. What is more,

during the extensive meet and confer efforts regarding Petitioners' subpoena, Petitioners offered to accommodate any witnesses designated by CBP to reduce any potential burden on them (e.g., by conducting the depositions via video conference, so that they would not have to travel). (McBride Decl. ¶ 6.)

## IV.   CONCLUSION

Because, under the Federal Rules of Civil Procedure, Petitioners are entitled to take CBP's deposition under Rules 45 and 30(b)(6), CBP should be compelled to produce, without further delay, a witness prepared to testify as to matter numbers 6, 8, 10, 12 (as to Diaz only), 16, 17, 18, and 19.

Dated: _3/10/16_____                  */s/ Brody McBride*_____
                                          Brody A. McBride, Esq.

                                          Singleton Law Firm, APC
                                          115 West Plaza Street
                                          Solana Beach, CA 92075
                                          Tel. (760) 697-1330
                                          Fax. (760) 697-1329
                                          Email. brody@geraldsingleton.com

Dated: _3/10/16_____                    _____
                                          Joseph Scrofano, Esq.

                                          Scrofano Law, PC
                                          406 5th St. NW, Suite 100
                                          Washington, DC 20001
                                          Tel. (202) 870-0889
                                          Email. jas@scrofanolaw.com
                                          Counsel for Petitioners